Good morning, Your Honors. May it please the Court, Gregory Karasik for the Plaintiff. In this case, the District Court gave three reasons for concluding that the Plaintiff had not established the superiority requirement for class certification, and none of those three reasons withstand legal scrutiny. He erred as a matter of law with respect to all three. The first was the supposed distinction between a business consumer and a personal consumer. And in this regard, Judge Carney suggested that he would have to do an individualized inquiry to determine whether people were using their cars for business purposes or personal purposes, and FACTA simply makes no such distinction. Section 1681N, that's 15 U.S.C. 1681N, which is the provision that talks about the remedies for willful noncompliance, said applies to violations, quote, with respect to any consumer, end quote. So there is no distinction in the law between a consumer engaging in a business purchase and a consumer engaging in a personal purchase. Also, the section of FACTA dealing with truncation requirements, which is 15 U.S.C. 1681C, subparagraph FG, it talks about violating FACTA by providing receipts with too much information to a cardholder at the point of sale or transaction. It doesn't distinguish between sales or transactions for business purposes or sales or transactions for personal purposes. It just doesn't matter under FACTA why a consumer uses a personal credit card, uses a credit card or a debit card. As long as there's a risk or an increased risk of identity theft that results from printing too much information on the receipt in violation of FACTA, it's covered. Now, to some extent, Judge Carney also suggested there was an ascertainability issue, which is really separate from superiority. But there is no ascertainability issue in this case because the class is defined. And I would direct the Court's attention to page 68 of the excerpts of record, which is the motion for class quote, on the person's credit card. So this is not a case where the class even includes from the beginning corporate credit cards or business credit cards. The class only includes person's credit cards. And that's objective criteria to define the class. People, as in any other kind of FACTA class action, who are given notice, like in the Bateman case, Your Honor, you know, can decide whether they're in the class. So for the judge to rely on this spurious business consumer versus personal consumer distinction was legal error. The second reason the judge gave was he said there were effective alternatives to class litigation. And in this regard, he first pointed to the admittance of the class. There seems, counsel, let me ask you a factual question concerning the record. A lot of dispute regarding whether there was a sufficient indication, I'm not sure how much discovery you conducted prior to the class certification stage, but as to which machines actually printed out too much information, where the machines were, I think you identified seven. I believe I read somewhere that the defendants indicated that there were only four. There's a lot of dispute over whether these machines actually printed out the information since 2008 or whether at some point between 2008 and the main plaintiff vacationing and figured out that there was a problem there because there were updates continually done. So the factual record is very muddled in terms of whether there's such evidence there. Isn't that a problem for class certification purposes? No, Your Honor, because the evidence is not muddled that there were at least 100,000 violations. It doesn't matter exactly how many came from which machines or even at the class certification stage whether we could pinpoint exactly which machines printed which receipts. The factual statement of facts in Judge Carney's opinion doesn't reference any muddledness or dispute. It was undisputed that the city of Laguna violated FACTA by printing over 100,000 receipts that had expiration dates on them that violated FACTA. The only merits issue that had to be determined on if this case were to go to trial was whether those violations were willful. And then you get the statutory damage remedy. But the violation of FACTA itself was undisputed. So getting back to the alternatives that Judge Carney relied on, first he suggested that the administrative claims process for the remedy. Would you walk me through how you get to 100,000? What assumptions you need to make about when the machines started printing these receipts? I believe there's evidence in the record that for certain machines approximately how many receipts were given per month. There's also evidence in the record from the deposition testimony that they admitted that the machines were not programmed to print the expiration dates on the receipts. So the number of violations in this case Isn't the record evidence regarding when those expiration dates started to be printed on the receipts equivocal at best? My recollection is that the appellant cites the testimony of a city employee with sort of a stray sentence which if it were on its own might support the But right within the same deposition, that same deponent says, I don't know when the machine started printing the date. So really it would be helpful for me if there's stronger evidence about when those dates were printed to know that. The beginning date is really not that important. What's only important is that they were printed after the beginning of the class date. The class date in this case, the class period is defined to start on June 4th, 2008, which is when the safe harbor provision created by the Clarification Act expired. So as long as they were printing at any time after that date, and I believe in this regard the record is undisputed, there were numerous violations. Certainly numerosity was never raised in this case as an issue after that date up until August of 2011 when the lawsuit was filed. So the exact starting date is really immaterial, Your Honor. So getting back to the administrative remedy, it's the claims process. It's not a remedy. The claims process is a government-required procedure that gives governments like the City of Laguna the opportunity to avoid litigation. But it doesn't require any kind of adjudication. The evidence in this case showed that there were at least 20 administrative claims that the City of Laguna just ignored and it has the right to do. So it makes no sense to say that an administrative claims process that doesn't result in any kind of resolution of any kind of claim can somehow be superior to one class action that resolves everybody's claim at the same time. Well, with regard to the class that you proposed in the court below, that excludes from the class any individual who has suffered MD theft as a result of the violations. So how do you propose to the district court that he manage in making all of these determinations? This is a class defined in a way like in every other factor class action where the class members can determine based on the objective class definition whether they are a member of the class. The judge does not have to determine who is in the class. He only has to determine whether an ascertainable class exists. Here, this class is ascertainable. And just like in every other factor case, which is defined as a class of people who receive credit card receipts, people have to look at the class notice when they get it and decide am I a member of this class or not. So this involves no difficulty administratively or manageability. The other rationale the judge gave in terms of alternatives to the class that they have to remember whether they use the credit card to pay for metered parking. Yes. And do they need a receipt? No. They don't need a receipt. It wasn't, I don't believe, a ground of the district judge's opinion, but it is an issue in the case, and it's raised by counsel, that the city has an assumption of risk offense because there's evidence in the record that certain persons were aware that the machines might print the expiration date on Do you want to address the effect that that has potentially on whether the district court should confirm? Yes. It has no effect because the law is well settled that in an appeal from a denial of class certification, you can only look to the reasons the district court gave. These kinds of orders are not sustainable for any reason on the record, as is the general rule in other kinds of appeals. In an appeal from this kind of decision, you look only to the reasons the district court gave, and if they are legally erroneous, as they are in this case, then the decision cannot be affirmed. The other alternative he gave was individual litigation. I can just quickly, it's absurd to suggest that The Supreme Court doesn't like class act. Lately. I didn't know that. I do know that, Your Honor, and a lot of district courts didn't like these FACA cases prior to the Bateman decision. This seems to be a vestige of that. This court, district court, didn't like it because it was against a municipality. Let me go quickly to the unfairness. And that Wal-Mart case was mine. Well, that was a very, very different kind of issue, Your Honor. Well, you're right about that. That's why it's so painful. The third rationale the district court gave was that it would be unfair to have the city face this potential liability. And the unfairness rationale for denying classification for lack of superiority was squarely rejected by this court in the Bateman case. The court said the substance of fairness of class action lawsuits is not an issue to be decided by the courts. Fairness in general should never be considered at all by the district court. The specific reasons for unfairness also don't stand scrutiny. First, he said it was a small municipality. Well, that makes no difference. The law is clear. You have to treat governments who engage in business just like private merchants. The district court said there was no harm. That's also a proposition that was squarely rejected by Bateman. The court there said you cannot consider the argument about the proportionality of the harm to liability because Congress has already said that its harm is worth between $100,000 and $1,000. And district court judges don't have the discretion to make their own policy judgments about the value of the harm. The court said there were corrective measures taken by the city. Again, that's another argument that was squarely rejected by the Bateman court. It was legal error for this judge to rely on that rationale. And finally, he relied on the ruinous liability arguments. And even though that was not squarely addressed in Bateman, we submit that the rationale of Bateman necessarily forecloses the ruinous liability argument for the very same reasons. There's no difference between the enormous liability argument they made in Bateman and the ruinous liability argument they made here. In either case, the defendant is saying I violated the law too much and my liability is too big to be subject to a class action. And that just turns justice upside down, where you can avoid liability because you violated the law too many times. And that was the thinking of this court in Bateman when it said that the enormous liability argument would, if accepted, would undermine the compensatory and deterrent purpose of FACTA, and so here with the ruinous liability argument. In the court in Bateman, even though it specifically said it reserved judgments on the ruinous liability argument, nevertheless said it's unduly speculative to consider the size of the defendant's potential liability. And that's exactly what this court did. So it doesn't matter what the size of the defendant's liability was. It was not a proper factor to be considered in the superiority analysis under Bateman, and the court's reasons for not following Bateman into footnote don't really withstand scrutiny. I do want to save the remainder of my time. Thank you.  MS. GOTTLIEB Good morning, Your Honors. May it please the Court, Karen Walter for Defendant, City of Laguna Beach. I apologize. I'm fighting a cold, but I hope that you can hear me sufficiently. Probably the dust, you know, that's kicking up your allergies. I've been fighting this all week, and I'm a lot better today than I was yesterday, so I'm grateful for that. No charge for my medical. Thank you, Your Honor. The district court here did not abuse its discretion when it determined that Plaintiff had failed to meet his burden of showing that the class he was proposing and defining was unassertainable, that it was going to take extensive individualized inquiry to figure out if the members of this class, according to the definition given by the plaintiff, even had a fact to claim. And in and of itself, that was a sufficient reason to deny this proposed class action. Does it make sense, counsel, to draw a distinction between individuals who use a personal credit card versus a business credit card, use it because they went to the grocery store on the way home from work versus parking because they're on their way into work? Does that distinction make sense, given that the purpose of the statute is really to not publish too much information, to insulate individuals from the risk of identity theft? How is that rationale served by drawing those distinctions that the district court did in this case? I think ultimately it's important to remember that FACTA is a statutory remedy, and so we have to look at the language of the statute to understand who is entitled to the statutory damages. And in this instance, FACTA is very clear that the only type of person or plaintiff or claimant that is going to be entitled to statutory damages is a consumer. And the law then defines a consumer as an individual. The plain language argument in this particular case I think only gets you so far, because you've got FACTA saying that only a consumer essentially can make this claim, and you've got the definition of a consumer being an individual as opposed to a person, including corporations. All right, accept all that. But is there anything in the plain language that indicates that if it's for a business purpose or if it's for a business credit card that then there wouldn't be a violation under FACTA? Unless that's inherent from the plain language, it would seem to me that we would have to look to the legislative history, perhaps the purpose of the statute, in order to figure out what the plain language really means in this case. I would distinguish that those are actually two different questions, whether a business cardholder has a claim under FACTA or whether someone who may be using an individual card but doing so for business purposes has a claim under FACTA. With respect to the cardholder, there have been a number of cases, and I think it is consistent with the plain language that says if the cardholder is not an individual, is not a consumer, but is rather a business entity, then that cardholder doesn't qualify for the statutory damages, which are what this class action is seeking on behalf of all class members. With regard to the business purpose, I would agree that that is a closer call, and that has not been addressed by other courts. I think an argument could be made that if someone is acting as a corporate agent, they're not acting as an individual, which is what a consumer is defined to be under FACTA. But I agree that that would need to be supported by some, you know, ultimately it would be the district court to make an initial ruling as to whether it's a matter of law. That made a difference. But here, there was the issue of the actual business cardholder that concerned. When you say if a cardholder is a corporation, are you talking about situations where individuals have a card? Like I have a government credit card. I'm assuming that's linked to all of my personal information as well, and so therefore over-disclosure of information could put me at risk of identity theft. Social Security and date of birth is all associated with that card, even though it's a government card. Are you including that sort of situation? I would be including what would be determinative is who is the cardholder in the cardholder agreement. And if it's a corporation or a business entity, then Congress, for whatever reason, did not make that cardholder eligible for statutory damages in the manner in which it wrote FACTA and the manner in which it defined who is a consumer versus who is a person. The definition of a person does include business entities, and they certainly could have written the statutory damages section to say any person, but they did not. They made a deliberate choice to limit it to any consumer, and that limiting, that narrowing has to have some meaning. And so that was Judge Carney's understanding that it was limited to cardholders. That has been other district courts' understanding. And that does here give rise to an ascertainability problem, not the only ascertainability problem, but certainly a serious ascertainability problem because of factual circumstances that were specific to this particular case that might not come up in other sorts of FACTA cases. But in this particular case, there was evidence in the record that the judge considered and made a finding that it was very likely that many parkers have used, were there for company purposes, and if you're there for company purposes, could have used a company credit card. What was the evidence that he relied on, that there were a lot of people there for company purposes? He relied on a declaration testimony from the city manager, where the city manager went through and talked about some of the different lots that were at issue and where they were located. For example, one of them is across from a copy and print service. One is by the post office. One is by several or near banks. One is near the Montage Resort, which is a place where business travelers and business conventions often occur. So he cited that. He cited the fact that the named plaintiff, the only parker whose deposition was actually taken in this matter, he used a business credit card sometimes to park in these lots. So that was sufficient evidence, evidence to support the finding that the judge made that it was likely that many parkers were not eligible for FACTA because they were not individual consumers when they engaged in that credit card transaction. He went, you know, we have additional ascertainability problems here because of the. . . wouldn't we effectively be holding that you cannot have a class action under FACTA? And I'll tell you why I ask that question. So payment is the circuit's last FACTA opinion, and that case involved movie theaters. But we know that business people sometimes for entertainment or other purposes will use their business credit cards to go to movie theaters and ball games and this sort of thing. So isn't this distinction available to every defendant in every FACTA case? And if it is, why shouldn't we be worried that we would be extinguishing the right of a class action? I don't think this factual finding could be made in every sort of consumer case. I think in the case of movie theaters, it would be very difficult to present evidence that would support a finding that many moviegoers use company credit cards, which was the finding that was made in this case. I think if it's a case about the purchase of baby cribs or grocery items or tricycles, it's going to be very difficult to provide evidence that would support that kind of factual finding. That's one of the reasons why this case and the district court's finding that this was a particular issue for this proposed class was really tied to the facts of this particular record. I also think that in other types of class actions, you actually . . . And that's because the locations of the various machines that were in violation? That is because of the locations and because of the example of the named plaintiff. Well, the named plaintiff per the appellants is one of thousands of individuals. I'm just getting to the core of your argument. It's a factual matter. The reason why you're saying this case is distinguishable from Bateman and the numerous other FACTA class action cases that are possible is because factually in this case, you can't really readily ascertain who used it for personal purpose versus for professional purpose. It's unlikely that any substantial number of people have actually kept their receipts in this case. And it goes beyond that to a finding that in this particular case, it's probably not a de minimis number of people who were using a corporate credit card. That the judge found it was likely that there were many people who were using a corporate credit card and that that finding was not clear error and that supports his decision that this was not . . . that this was going to pose a serious ascertainability and a manageability class. I would also say that in other kinds of actions, you know, you buy a physical item. And if you're having a class action over baby seats or peanut butter, you can ask consumers to go back to their house and to look at the label and look at the serial number and actually determine if the product, you know, falls within the class definition. They might be able . . . there's something distinct about it. They might be able to remember why it was that they bought that product. They've only bought one of them. You know, here we have this incredibly transitory, ephemeral purchase of parking. And there are, you know, no records that someone can go back to. So it's . . . they wouldn't be likely to keep a parking permit on their dashboard over time. It's not like a receipt that would have a warranty value. If you ask somebody, you know, did you park in Laguna Beach? And when? And which lot did you park in? And that makes a difference here because even though the council has said that it doesn't . . . they don't need to include machines in their class definition, they absolutely do. There's many machines that don't even take credit cards. There's other machines that took both cash and credit cards. Other machines . . . I'll let you answer the same questions I asked the council. What's the state of the evidence in the record regarding when these machines started printing out the information that's at issue here? And is there a dispute over how many machines are issued? When you compare that with the total number of machines . . . There absolutely is a dispute. The best evidence is that no one knows when any given machine started or why. What we do have in the record is the testimony from the CEO of Ventec, the company that makes these machines. And he said it was not their default setting to print the expiration date. So someone had to change it at some time. We have testimony in the record from Pacific Parking, from Vernon Cash . . . He was the guy who was actually in charge of programming them. And while he doesn't remember changing it, he can't rule out that he inadvertently changed it. We got a lot of testimony about how these machines are programmed. And they're not programmed line item by line item, but rather there are these rate tables . . . which are a conglomeration of programming commands. And if someone wants to change the rate table for a particular machine . . . They may go back and grab an old one, substitute it in, change a few things . . . and not realize that they've suddenly changed something they didn't mean to change. And then now all of a sudden, the machine is going to start printing expiration dates. We had a lot of evidence in the record about incidences where there was vandalism, repairs, maintenance, just malfunctions. I think we had one machine one time that just stopped accepting payments of $6 for whatever reason. And so, it needed to be reprogrammed. So, let me ask you a question. Who is behind this legislation? Who wanted it? I mean, it's so hard to get a bill passed these days. Why would they get excited about parking machines? I could offer some political speculation on that, Your Honor. I mean, I think that, you know, it is always, you know, politically popular to sound like something is, you know, pro-consumer . . . without really investigating, you know, what is the real impact? And who has really benefited? And how should this be administrated in a practical manner? You don't know. I do not. I don't know if it was consumer attorneys or consumer groups. I do not. Ms. Walter, I want to just turn very briefly to something that your opponent raised. Your brief does a quite thorough job of laying out all the various reasons why the district court could also have denied certification in the case. And your opponent says, we're limited here to examining only the reasons actually given by the district court. And we may not affirm for a different reason, even if that reason appears in the record. Do you want to address that? The sort of cornerstone of appellate review is that unless there's been a prejudicial error, something that would merit reversal that the district court can affirm. And so if there's alternative grounds or, you know, a series of different rationales, then if any one of those is sufficient to justify denial of class certification, then there would not be a prejudicial error that was committed by the district court here. Just very quickly to address just a few of the other points that were raised in argument earlier today. When the district court did do its superiority analysis, it did compare the opportunity to submit a government claim or pursue an individual action with the procedures attendant to a class action. And while the plaintiffs, you know, consider it, I think the word I wrote down this morning was absurd, that anyone would bring an individual fact to action, the fact is that they do. We had reported decisions on Lexis, and I'm sure there are many others in small claims court around the country that aren't on Lexis, and so they're not, you know, easy to find in sight, but they do. Congress put in the law an ability to recover attorney's fees and costs, and there have been many district courts which have found that individual actions are a true alternative. They're adequately incentivized. And so at that point, one needs to look and compare, you know, what are the consequences that will flow from invoking individual procedures versus what are the consequences that will flow from invoking class action procedures. And I think what we see in this case is that that was, you know, as he was considering those various factors in the last part of his decision where he was commenting on the fairness, that that's exactly what he was doing, is saying that, you know, Bateman absolutely permits as part of the superiority analysis for district courts to consider alternative procedures and ask not only from the standpoint of the litigants, but also from the standpoint of the court system, of the public at large, which of these is going to be superior, which of these is going to be more fair in the sense that a judicial procedure should, I hope we would all agree, you know, it should give someone who has a claim the opportunity to come forward and present their evidence, someone who has a defense the opportunity to present their evidence, and then it should have some efficiency in getting money if someone has proven liability to that person who has actually proven their claim. And if that's what the district court is supposed to be considering in thinking about what procedure here is the most fair, then there was no abuse of discretion. There's a lot of evidence in the record here that an individual action would allow for the presentation of evidence about where did you park, when did you park, did you actually suffer from identity theft. As the court has noted, the current class definition actually excludes anyone who has suffered from identity theft as a result of the fact of violations alleged in the complaint. And so we know that certifying the class proposed by plaintiff is not going to be an efficient vehicle to get compensation to anyone who has actually suffered from identity theft. There are a whole lot of other sort of odd incentives that are at play here that the district court was aware of. For example, at the hearing on this matter in front of the district court, the plaintiff told the district court that even if a class was certified and a judgment was entered, that evidence shows very few people will come forward to actually collect their statutory damages. That was the hearing transcript in the supplemental excerpts of record, page 21. So that evidence was in front of the district court where he knew that class counsel was admitting that their proposed procedure of a class action, even that, was not going to be a very efficient or fair vehicle for getting money to people who had FACTA claims. I think here if we had the opportunity to assess claims individually, I know counsel has cited the fact that there were persons represented by counsel who presented government claims and they have argued that, well, because the city didn't pay those claims, that should somehow be evidence that the claim system isn't good for resolving individual claims. But they overlook what those claims said. Those claims said they were class action claims and they couldn't be satisfied unless the class was paid and counsel was paid commensurately, unless the city provided the names and addresses of everyone who parked in the public parking lots. So the fact that those particular claims remained unpaid is not at all a litmus test for how effective individual claims could be to actually allow individual FACTA claimants to present the facts important to them, to allow the city to present the facts important to its defense and then to make sure that the money, the public dollars at stake here, these are all public dollars from the city of Laguna Beach, that those dollars go proportionately to people who actually have proven their claim and not proportionately to lawyers for either the city or the plaintiff. Priority analysis requires comparison of methods available to resolve the entire controversy, not just one individual's claim. What I said earlier was that it's observed to think that 100,000 individual lawsuits is more efficient than one class action lawsuit. And what's remarkable about this case is that's exactly what Judge Carney said in the Oakley case where he approved a settlement in a FACTA case on a class basis. And the language there where he recognized, as most other courts have, that it's silly to think that 100,000 lawsuits or 100,000 claims, procedures even, administrative claims is more efficient than one judicial proceeding. Here he turned around 180 degrees and said something totally different. And the only reason is because the defendant in this case was a public entity and not a private defendant. With respect to the business personal consumer distinction, I think it's important to remember that, first of all, this class by definition does not include business card holders. So really the court doesn't even have to address this issue because we've excluded it on the basis of the class definition. But if the court does want to look into it, we urge the court to rule that there is no such distinction because there is no text in FACTA that they've cited to establish it. Also the truncation requirement language talks about giving receipts to the cardholder. So in FACTA they don't define the term cardholder. It's defined in other statutes, but in this statute it's not defined. And so when the statute says it violates the law when you give a receipt with too much information, quote, to the cardholder, all they mean by the word cardholder is the person who's using the credit card. They're not making a distinction between corporate account holders and personal account holders. So there's nothing in the language of FACTA that supports this distinction. And as someone who has litigated many FACTA cases, I will tell you that every defendant has made this argument. And fortunately most district court judges have rejected it, either out of hand or at least not a reason for denying class certification. This is an outlier, this case, in terms of relying on this rationale to deny class certification at the outset. If that were true, wouldn't there be a well-settled rule in the federal law that goes your way? I don't see that in the briefs. Well, there's very few appeals on these issues because most of the time class certification, at least after abatement, has been granted. One of the things I was surprised to learn when I moved from the state to the federal court is that people don't just cite published court of appeal cases. They frequently cite district court cases, and they frequently cite unpublished district court cases. And, in fact, it's not uncommon to have nothing but that kind of authority. So I would ask the same question, and that is, if it's true, as you're saying, that district courts routinely reject the distinction that's being advanced by the city, wouldn't we see that in a string of citable, even if unpublished, cases? I believe we've cited many cases in our brief where the district courts have rejected this distinction. I believe the majority of them have. There are a few, like this case, but the important issue for this court, if it gets to the issue, if it gets past the class definition problem, which moots the issue, is what is the basis for this distinction? Because there's no rationale tethered to the text or the purpose of FACTA for this distinction. And I agree with Your Honor that this would be the death knell of FACTA class actions. Because when somebody goes to a store and buys something, you don't know for what purpose. People use their credit cards for all kinds of things. And if this distinction is allowed to survive, it would be the end of FACTA class actions. And one last very, very quick point, if I may, the incentive of attorney's fees is not enough. As the court in Ninth Circuit recognized in the local joint executive board case, which was cited in our papers, that was a case where individual claims were worth $1,300, and the fact that there was attorney's fees available was not enough for the court to say that individual litigation was an alternative, superior to one class action lawsuit. So for all the reasons that we've discussed, we believe the court in this case did err as a matter of law. Unless the court has any further questions, we will submit. Thank you. Thank you both for your arguments. And thank you for your arguments. And I believe that that concludes our calendar. This court will recess until called.
judges: Tigar, Pregerson, Nguyen